Filed 8/27/15  In re Marriage of J.A. and K.A. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of J.A. and K.A. | H041438<br>(Santa Clara County<br>Super. Ct. No. 510FL000466) |
| J.S.,<br><br>      Appellant,<br><br>v.<br><br>K.A.,<br><br>      Respondent. | |

## I.  INTRODUCTION

J.S., mother,[1] and K.A., father, divorced in 2010 and obtained a custody order awarding joint physical and legal custody of their two sons, who were then eight and ten years old.  Mother also obtained a domestic violence restraining order, which expires in October 2015, against father.  After mother later moved to Clovis, California with her new spouse, father sought to have the children reside with him a greater amount of time during the school year.  The trial court conducted an evidentiary hearing.  In a July 16,

---

[1] Mother's name during the marriage was J.A.  She has since changed her name to J.S.

2014 order, the court determined that the parties would continue sharing joint legal custody, but that it was in the best interests of the children to be with father during the school year rather than moving away to Clovis with mother.

On appeal, mother contends that the trial court erred by failing to provide, prior to any child custody mediation in the case, the notice required by Family Code section 3044,[2] which sets forth a rebuttable presumption that it is detrimental to the best interests of a child to award custody to a person who has committed domestic violence within the previous five years. (§ 3044, subds. (a) & (f).) Second, mother contends that the court failed to properly apply section 3044 in determining that father had overcome the presumption at the evidentiary hearing. Third, mother argues that the court erred in relying on *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*) in making the best interests determination because *LaMusga* does not apply to move-away cases involving domestic violence. Fourth, mother alternatively contends that the court failed to properly apply *LaMusga.*

For reasons that we will explain, we will affirm the July 16, 2014 order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Prior Custody Arrangements*

Mother and father married in 1999 and had two boys, who were born in 1999 and 2002. The couple divorced in 2010.

In October 2010, the trial court issued a restraining order after hearing under the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.) protecting mother against father. Father is prohibited from having any contact with mother, except "brief and peaceful contact as required for court-ordered visitation of children unless a criminal protective order says otherwise." The restraining order expires on October 25, 2015.

---

[2] All further statutory references are to the Family Code unless otherwise indicated.

The trial court further ordered joint legal and physical custody of the children. Mother's residence was identified as the children's primary residence. Father was to have care and control of the children for three and a half hours on Wednesdays, and every weekend except the third weekend of each month. Mother was to have care and control of the children at all other times. Father was required to complete a "parenting without violence class." The order further provided that "[n]either parent shall remove the children from Santa Clara County for the purpose of establishing a residence without the written consent of the other parent or further order of the Court."

**B. *Mother's Move to Clovis, California***

At some point, mother expressed an intent to move to Clovis, California. Father opposed the move and filed a "Request for Order" with the trial court.[3]

In mother's trial brief filed in early July 2014, mother indicated that her new husband had received an opportunity to relocate to Clovis for a better job. He moved in February 2014, and mother moved with the children in June 2014, after school had ended. According to mother, the parties had resolved all issues except where the children would live during the academic year. Mother requested "permission" to relocate to Clovis and to have primary physical custody of the children. She sought care and control of the children during the school year, with father "keeping his current visitation schedule" of having the children every other weekend, any three-day weekend, holidays, and allotted vacation time. Mother proposed that during the summer, the parties would have the children on alternating weeks.

Father proposed having custody of the children during the school week and mother having custody three weekends per month, with the reverse schedule occurring during the summer.

---

[3] Father's written request is not contained in the record on appeal.

## C. *The Evidentiary Hearing*

An evidentiary hearing was held on July 7 and 14, 2014. Mother appeared as a self-represented litigant, and father was represented by counsel. Mother, father, and their respective new spouses testified. The court also interviewed the parties' two children, who were then 14 years old and 12 years old. On appeal, there is no reporter's transcript or settled statement reflecting the oral proceedings of July 7 and 14, 2014.

The exhibits introduced into evidence at the July 2014 evidentiary hearing are contained in the record on appeal. Those exhibits reflect the following.

(1) According to a San Jose Police Department report from September 2010, the older child reported that father threw a cat at the child, which caused a scratch on the child. The child reported that the next day, father shoved the child causing the child to hit a bookcase, forced down the child and attempted to put a bar of soap in the child's mouth, rubbed the soap on the child's teeth, tried to put hot sauce in the child's mouth, and pulled the child off a bed causing the child's head to hit a rail.

According to the police report, father stated that he had tried to throw a cat out of the room, and that the child got scratched when the child tried to catch it. Father reported that he gave the child soap because the child was being "mouthy" and disrespectful. Father denied pinning down the child. Father also reported that the child was kicking at him, and that the child fell off the bed and hit his head after father grabbed the child's leg.

(2) Beginning in December 2010, after mother obtained the October 2010 domestic violence restraining order against father, father apparently was to have custody of the children for three and half hours on Monday and Wednesday evenings, overnight on Mondays and Wednesdays during summer vacation, and on alternate weekends.

(3) In May 2011, in connection with a criminal case pending against father and involving the older child and mother, protective orders were filed protecting them from father. Father was prohibited from, among other things, harassing the child or engaging

4

in corporal punishment, and from having any contact with mother except peaceful contact for the exchange of children for court-ordered visitation.

(4) According to a December 15, 2011 letter addressed to father from his defense counsel "memorialize[ing] the outcome" of father's criminal case, father pleaded no contest to misdemeanor false imprisonment of his older child. Father was placed on probation for three years with various terms and conditions, including completion of a one-year parenting class. All other charges were dismissed. The May 2011 protective order for the child was extended until December 14, 2013.

(5) According to a written progress report for the family court, father attended six sessions of a "Parenting Without Violence" program in October and November 2010.

**D.** *The Trial Court's July 2014 Order After Hearing*

The trial court filed a written order on July 16, 2014. The court found that mother and her new husband relocated to Clovis around November 2013, because of a job opportunity for mother's new husband, who had family in Clovis. Father had also remarried. Father was seeking a "change in the primary custody" so that the children were with him during the school year. The trial court stated that it was "mindful of a Domestic Violence finding (Family Code § 6203 et seq.) against Father." Father had "completed a 52 week Batterer's Intervention Program [(BIP)]," and he "testified about its effect on him." Regarding the court's impressions of mother and father, the court stated: "Both parents strike the Court as loving, fair individuals. Neither would speak ill of the other during the hearing. The Court believes that each truly believes that she/he would be the best choice for 'primary' parent."

In making its determination regarding whether the children should remain in the area with their father or move to Clovis with their mother, the trial court acknowledged the need to consider the children's best interests pursuant to the Family Code. The court cited *LaMusga*, *supra*, 32 Cal.4th 1072, for the factors to be considered in a "move away" case. The court then made the following findings.

5

Mother and father were currently "sharing custody/parenting time equally on a week on/week off schedule." During the prior school year, before mother moved to Clovis, the parties also shared custody equally "but on a different schedule." Regarding stability and continuity in the custodial arrangement, the court observed that continuity would be "very difficult" due to the distance of the move. The court noted that Clovis is a two and a half hour drive from San Jose. Further, the parents had been involved in the children's school, sports, and other activities, and such involvement would be affected by the move. The court believed that the move would be "detrimental to the relationship of one of the parents," but that the effect could be minimized.

Although the court found it "difficult to predict" whether each parent would facilitate contact with the non-custodial parent, the court "anticipated" that each parent would do so. The court observed that the children were at an age where the custodial parent would have to address a variety of issues and "temptations" facing teens, and that the non-custodial parent would be more of an observer than a participant during these years.

The court found mother and father to be respectful and polite to one another and believed that their relationship was "[a]verage to good." The parties had "managed to resolve small differences in the past," but the disagreement over the move had caused a "deep wound" and the parties were "unable to fashion a remedy."

The court stated that it had considered the "input" of the children based on its interview of them.[4] The court found that the children were emotionally "bonded" to both parents. The children were also both "active" with "ongoing involvement in sports." The court found that the move would have a "[s]ignificant" impact on the children.

---

[4] The transcript of the interview was sealed by stipulation of the parties and is not contained in the record on appeal.

Regarding educational guidance, the court found that father was in "daily contact" with the school. Further, the older child appeared to have some behavioral issues, but the court found father to be "well informed and attempting corrective steps." The court found that both parents "seem[ed] to have [a] clear idea of appropriate disciplinary steps."

Mother and father had "family ties" in San Jose. The court found that relocating to Clovis would mean a newer and larger house; a smaller, more connected community; and a fresh start for the older child.

Regarding a history of abuse under section 3044, the court observed that a domestic violence restraining order had been issued in October 2010. The court stated: "Father seems to have overcome the presumption by participation and completion of BIP. [The older child] has no fear of his Father. Father is contrite." The court did not believe that either parent had a substance abuse issue.

The trial court concluded as follows: "This is not an easy case to decide. [¶] In situations where parents share time with their children equally, a move-away is particularly difficult. And, though a § 3044 finding and presumption might be meaningful in other cases, not only has the presumption . . . been overcome in this case, but [the older child] has no fear of Father whatsoever. [¶] The Court is required to evaluate all of the *LaMusga* factors in conjunction with the goal of providing a situation that is in the best interests of the children. It has done so in this case." The court believed that the "[b]est [i]nterests of the [children] is best accomplished by them spending the next school year with Father, with very liberal visitation to Mother."

The trial court granted the parties joint legal custody of the children. The court generally ordered that, during the school year, father would have care, custody, and control of the children on weekdays, and that mother would have care, custody, and control of the children on three weekends per month. During the summer, father would

7

have the children two weekends per month, and the remaining time the children would be with mother.

### E. *Subsequent Proceedings*

Mother, with the assistance of counsel, filed a motion for new trial. Among the documents included with the new trial motion were what appears to be minutes from a December 14, 2011 criminal proceeding against father. The minutes reflect that the charging document against father was amended, and that he pleaded no contest to a misdemeanor violation of Penal Code section 236 (false imprisonment) involving victim "John Doe." Father was placed on probation for three years with various terms and conditions. Other counts were dismissed.

Father filed opposition to mother's motion for a new trial. The trial court denied the motion on September 10, 2014, after a hearing.

Mother filed a notice of appeal on September 11, 2014, from the "[j]udgment after court trial." Her petition for writ of supersedeas and request for immediate stay were denied by this court. This court also denied mother's requests for judicial notice, which were filed with her opening brief on appeal and her reply brief.[5]

### III.  DISCUSSION

#### A.  *Sufficiency of Mother's Notice of Appeal*

As a preliminary matter, father contends that mother's notice of appeal fails "to set forth the judgment being appealed," and he "asks this court to determine whether the defects . . . require dismissal of the appeal." Father observes that mother's opening brief on appeal refers to several orders.

A notice of appeal "must be liberally construed" and "is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).)

---

[5] Although mother's requests for judicial notice of various documents were denied, we have considered the documents to the extent they were filed with her petition for writ of supersedeas.

A notice of appeal " 'can be interpreted to apply to an existing appealable order or judgment, if no prejudice would accrue to the respondent.' " (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20.) "In determining whether a respondent has been misled by errors on the face of the notice of appeal, a reviewing court may consider the contents of the designation of record . . . ." (*D'Avola v. Anderson* (1996) 47 Cal.App.4th 358, 362.)

In this case, mother states in her notice of appeal that she is appealing from a "[j]udgment after court trial" without specifying the date of the judgment. However, in her notice designating the record on appeal, mother specifies July 16, 2014, as the date of the "[j]udgment or order appealed from," and the court's order of that date is included in the record on appeal. Father would not be misled or prejudiced by our interpretation of the notice of appeal as encompassing this order, as he has argued the merits of the appeal with respect to that order. We therefore turn to the substance of mother's appeal.

**B.** *Notice Pursuant to Section 3044*

Mother contends that the trial court failed to provide the notice required by section 3044 when it ordered her and father to mediation at various points in time between 2010 and 2012. She argues that if she had received notice under section 3044, she would have retained counsel and "could have introduced a great deal of additional evidence relevant to [section] 3044."

Father contends that notice under section 3044 was not required at the time of the July 2014 evidentiary hearing.

In reply, mother argues that if she had been given notice under section 3044 before any mediations, she would have retained counsel, she would have asserted custody rights under section 3044, she would not have agreed to joint custody "in the first place," and "there would never even have been a trial on the move-away issue since she would have asserted her rights under [section] 3046[, subd.] (a)(2)."

9

Section 3044 provides for a rebuttable presumption that it is detrimental to the best interest of a child to award custody of the child to a person who has "perpetrated domestic violence" within the previous five years. (§ 3044, subd. (a).) "[A] finding of domestic abuse sufficient to support a DVPA restraining order necessarily triggers the presumption in section 3044" because the "DVPA restraining order must be based on a finding that the party being restrained committed one or more acts of domestic abuse." (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1267 (*S.M.*).)

The presumption under section 3044 may be rebutted by a preponderance of the evidence. (§ 3044, subd. (a).) In determining whether the presumption has been overcome, the court is required to consider seven factors that are set forth in section 3044. (*Id.*, subd. (b).)

Relevant to mother's contention on appeal, section 3044 provides that, "[i]n any custody or restraining order proceeding in which a party has alleged that the other party has perpetrated domestic violence in accordance with the terms of this section, the court shall inform the parties of the existence of this section and shall give them a copy of this section prior to any custody mediation in the case." (§ 3044, subd. (f).) The notice requirement is intended "to ensure that parties *in custody mediations* be informed about and provided a copy of section 3044. Thus, section 3044[, subdivision ](f) requires a court in 'any custody or restraining order proceeding' involving domestic violence accusations to provide the statutory notice to the parties before they enter into custody mediation." (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 825.)

Assuming the issue of notice under section 3044 for custody mediations occurring between 2010 and 2012 is cognizable in this appeal, and assuming the trial court was required to provide notice under section 3044, mother fails to provide an adequate record establishing that the court failed to provide notice under section 3044.

In conducting our appellate review, we presume that a judgment or order of a lower court is correct. " 'All intendments and presumptions are indulged to support

10

[the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *Conservatorship of Rand* (1996) 49 Cal.App.4th 835, 841.) Therefore, the appellant "has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).) " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' [Citations.]" (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*); see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Thus, where the appellant fails to provide an adequate record as to any issue the appellant has raised on appeal, the issue must be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 (*Maria P.*).)

In this case, the record contains declarations from mother and her counsel on the issue of notice under section 3044. In an August 2014 declaration, which mother filed in connection with her motion for new trial and which is contained in her petition for writ of supersedeas in this court, mother states: "When I first filed for divorce from [father] in 2010, there were some meetings for mediation, including the custody issue. I cannot remember receiving a copy of [section] 3044 or being informed about it at that time. There have been no further mediations or court hearings on the custody issue since then until this year. I am quite sure that I have not been provided with a copy of that statute nor have been informed about it within the past year, during the time that the Court has been holding hearings on my wish to relocate my sons to Clovis with me." Mother's counsel states in a September 11, 2014 declaration, which is contained in mother's petition for writ of supersedeas in this court, that he "personally examined the entire case file" in superior court "with particular attention to any minute orders or other documents showing that the court had, at any time, met the requirements under [section] 3044[, subdivision ](f) to inform [mother] of her rights under that statute," and he "found none."

11

The declarations from mother and her counsel do not foreclose the possibility that the trial court informed mother about, and gave her a copy of, section 3044. Mother does not provide a reporter's transcript or settled statement of any of the oral proceedings in this case, including those in which she was ordered to mediation. In the absence of an adequate record establishing that the trial court failed to comply with section 3044, subdivision (f), mother fails to demonstrate error.

## C. *Rebuttable Presumption Under Section 3044*

Mother contends that the trial court failed to consider all relevant evidence under section 3044, subdivision (a), and failed to consider all the factors set forth in subdivision (b), in determining that father, who had perpetrated domestic violence, had rebutted the presumption that an award of custody to him was detrimental to the children's best interests.

Subdivision (a) of section 3044 states: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child or against the child or the child's siblings within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence."

Subdivision (b) of section 3044 provides that, "[i]n determining whether the presumption set forth in subdivision (a) has been overcome, the court shall consider all of the following factors:

"(1) Whether the perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child. In determining the best interest of the child, the preference for frequent and continuing contact with both parents, as set forth in subdivision (b) of Section 3020, or

12

with the noncustodial parent, as set forth in paragraph (1) of subdivision (a) of Section 3040, may not be used to rebut the presumption, in whole or in part.

"(2) Whether the perpetrator has successfully completed a batterer's treatment program that meets the criteria outlined in subdivision (c) of Section 1203.097 of the Penal Code.

"(3) Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate.

"(4) Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate.

"(5) Whether the perpetrator is on probation or parole, and whether he or she has complied with the terms and conditions of probation or parole.

"(6) Whether the perpetrator is restrained by a protective order or restraining order, and whether he or she has complied with its terms and conditions.

"(7) Whether the perpetrator of domestic violence has committed any further acts of domestic violence."

As explained by one appellate court, "[t]he section 3044 presumption . . . does not change the best interest test, nor supplant other Family Code provisions governing custody proceedings. This presumption may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent. (§ 3044, subd. (b)(1).) Nor does the statute establish a presumption for or against joint custody; again, the paramount factor is the child's health, safety and welfare. [Citations.] And where the section 3044 presumption has been rebutted, there is no statutory bar against an award of joint or sole custody to a parent who was the subject of the order." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055, fn. omitted (*Keith R.*).)

On appeal, custody and visitation orders are reviewed for an abuse of discretion, and the court's factual findings are reviewed under the substantial evidence standard.

13

(*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497 (*Fajota*).) " 'A trial court abuses its discretion when its decision exceeds the bounds of reason by being arbitrary, capricious or patently absurd. [Citation.] In determining whether there has been such an abuse, we cannot reweigh evidence or pass upon witness credibility. The trial court is the sole arbiter of such conflicts. Our role is to interpret the facts and to make all reasonable inferences in support of the order issued. [Citation.]' [Citations.]" (*People ex rel. Harris v. Black Hawk Tobacco, Inc.* (2011) 197 Cal.App.4th 1561, 1567 (*Black Hawk Tobacco*).) An abuse of discretion may be shown if the court "applies improper criteria or makes incorrect legal assumptions. [Citation.]" (*Fajota*, *supra*, at p. 1497, italics omitted.) "If the record affirmatively shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise informed discretion with awareness of the full scope of its discretion and applicable law. [Citations.]" (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 26 (*F.T.*), italics omitted.) As we explained above, the appellant has the burden to show error by an adequate record or else the issue will be resolved against the appellant. (*Denham*, *supra*, 2 Cal.3d at p. 564; *Ballard*, *supra*, 41 Cal.3d at p. 574; *Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296; *Gee*, *supra*, 99 Cal.App.4th at p. 1416.)

We determine that mother fails to establish that the trial court abused its discretion in its application of section 3044, by purportedly failing to consider all relevant evidence under subdivision (a) and all the factors set forth in subdivision (b) in determining that father had overcome the presumption against custody.

First, it is apparent from the trial court's written order that it was aware of the section 3044 presumption, its applicability to the case, and the burden upon father to overcome the presumption. The court cited section 3044 in its order, and the court expressly stated that it was "mindful" of a domestic violence finding in the case based on the issuance of the restraining order against father in October 2010 under the DVPA. (See *S.M.*, *supra*, 184 Cal.App.4th at p. 1267 ["[a] finding of domestic abuse sufficient to

14

support a DVPA restraining order necessarily triggers the presumption in section 3044"].) The court also referred to evidence to support its conclusion that the presumption had been overcome by stating, "Father seems to have overcome the presumption by participating and completion of [a batter's intervention program]. [The older son] has no fear of his Father. Father is contrite."

Second, in view of the trial court's awareness of the applicability of section 3044 and its statement of reasons why the section 3044 presumption was overcome, we are not persuaded by mother's contention that the court's failure to discuss *all* the evidence that might bear on that determination, including the statutory factors set forth in subdivision (b), demonstrates that the court failed to apply the proper criteria or made incorrect legal assumptions in making its determination under the statute. For example, mother contends that the trial court failed to discuss the nature of father's domestic violence against her and their older son, failed to sufficiently discuss whether father had a substance abuse problem (see *id.*, subd. (b)(3), failed to discuss whether father had complied with the terms of his probation (see *id.*, subd. (b)(5)), failed to discuss whether father was in compliance with a protective order or restraining order (see *id.*, subd. (b)(6)), and failed to discuss whether father had committed other acts of domestic violence (see *id.*, subd. (b)(7)).

Mother cites *F.T.*, *supra*, 194 Cal.App.4th at page 28, and *Keith R.*, *supra*, 174 Cal.App.4th 1047 at page 1057, to support her contention that the court was required to state on the record its consideration of all the requisite provisions of section 3044 and all the relevant evidence. Neither case provides support for her broad assertion. In *F.T.*, the appellate court directed the trial court on remand to "expressly find whether Mother perpetrated an act of domestic violence under section 3044 and, if so, whether section 3044's presumption has been rebutted by Mother." (*F.T.*, *supra*, at p. 28.) In the instant case, the trial court made such express findings with respect to father. The appellate court in *F.T.* further directed the trial court on remand as follows: " 'Before

15

reaching any [decision on Father's move-away motion], the court should conduct a detailed review of the evidence presented at trial and carefully weigh all of the relevant factors required by section 3044.' " (*F.T.*, *supra*, at p. 28, citing *Keith R.*, *supra*, 174 Cal.App.4th at p. 1057, italics omitted.) In the instant case, the trial court's order indicates that the court conducted the requisite review and weighing.

We understand mother to also argue that the trial court was required to state its reasoning pursuant to section 3011, subdivision (e)(1), and that the court's failure to address all the evidence relevant to section 3044 indicates that the court misapplied the law.

Section 3011, subdivision (e)(1) provides that, where allegations of abuse are made about a parent, including allegations about a history of abuse or the illegal use or abuse of alcohol or controlled substances by a parent, then a court awarding custody to that parent "shall state its reasons in writing or on the record."[6] (See also *id.*, subds. (b) & (d).) Assuming the trial court in this case was required to provide a statement of reasons pursuant to section 3011, subdivision (e)(1), nothing in this subdivision requires the court to address on the record every factor under section 3044 or to otherwise explain its weighing process as to each factor. Thus, we are not persuaded by mother's argument that the court's failure to discuss all evidence relevant to section 3044 demonstrates the court's failure to apply the proper legal principles in making its determination under section 3044.

Indeed, a statement of reasons under the Family Code is different than a "statement of decision" under Code of Civil Procedure section 632, which requires a

---

[6] Section 3011 applies when a trial court makes a determination of the best interest of a child in a proceeding for dissolution of marriage, nullity of marriage, legal separation of the parties, exclusive custody pursuant to section 3120, custody in a proceeding pursuant to the DVPA, custody in an action pursuant to the Uniform Parentage Act (§ 7600 et seq.), or custody in an action brought by the district attorney. (§§ 3011, 3021, subds. (a)-(g).)

court to "issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." In *In re Marriage of Buser* (1987) 190 Cal.App.3d 639 (*Buser*), the appellate court explained the distinction between these two types of statements in the context of a joint custody order under former Civil Code section 4600.5 (now Family Code section 3082), which, similar to section 3011, subdivision (e)(1), required the court to " 'state in its decision the reasons for granting or denying the request' " for joint custody. (*Buser*, *supra*, at p. 642 [quoting former Civ. Code, § 4600.5, subd. (c)].)

The *Buser* court explained as follows: "In utilizing different language in [former Civil Code section 4600.5, subdivision (c) and Code of Civil Procedure section 632] the Legislature clearly intended to distinguish a statement of reasons from a statement of decision. Otherwise, the Legislature would simply have provided for a statement of decision when joint custody is granted or denied. [¶] We believe that the Legislature intended a statement of reasons to be something different in content and purpose than a statement of decision. The statement of reasons was not intended to set forth the legal basis for the decision, but to provide parents with the reasons -- in plain, everyday English -- why the court granted or denied joint custody. In contrast, a statement of decision is a formal legal document containing the factual and legal basis for the court's decision on each principal controverted issue for which a statement is requested. Because of the significant legal effect of a statement of decision, Code of Civil Procedure section 632 and California Rules of Court, [former] rule 232, provide a highly detailed process by which counsel for the litigants can provide input into and affect the final content and language of the statement of decision, so that the appellate court has before it the factual and legal basis for the trial court's determination of the issues being reviewed on appeal. This process is not required for a statement of reasons. [¶] The distinction between a statement of decision and a statement of reasons is more than semantic and

17

should be maintained.  There are both substantive differences and a difference in purpose between the two.  A statement of decision is of greater legal import, for it provides the framework within which a trial court's decision can be reviewed by the appellate court." (*Buser*, *supra*, 190 Cal.App.3d at pp. 642-643.)

Thus, in the present case, mother fails to present a persuasive argument to support the contention that the absence of a discussion in the trial court's written order of all evidence relevant to section 3044, including the factors set forth in subdivision (b), requires a conclusion that the trial court failed to properly apply section 3044.  As we have explained, the trial court in its written order recognized that the section 3044 presumption applied because father had perpetrated domestic violence, the court determined that the presumption had been overcome, and the court set forth the reasons for its determination that the presumption was overcome.  We believe the court's written order satisfied the requirement of a statement of reasons under section 3011, subdivision (e)(1) with respect to the court's section 3044 determination.  We are not persuaded by mother's argument that the court's failure to discuss other evidence that would be relevant to a section 3044 determination indicates that the court failed to properly apply section 3044.

Third, as to some of the statutory factors that the trial court failed to discuss in its written order but was required to consider in determining whether the section 3044 presumption had been rebutted, mother fails to establish that there existed evidence in the record that would have warranted a different finding by the court as to whether the presumption had been overcome.  For example, although mother refers to the trial court's failure to discuss whether father had complied with the terms of his probation (see § 3044, subd. (b)(5)), mother makes no contention that the record contains evidence that father actually violated probation.  Similarly, although mother contends that the trial court failed to discuss whether father was in compliance with a protective order or restraining order (see *id.*, subd. (b)(6)), mother makes no assertion that the record

contains evidence that father actually violated any such an order. Likewise, although mother argues that the court failed to discuss whether father had committed domestic violence against anyone other than their older child, mother makes no assertion that the record contains evidence that father in fact committed "any further acts of domestic violence" (*id.*, subd. (b)(7)). Mother's sole citation to the record regarding evidence of other domestic violence is an excerpt from a police report in which she primarily described an *earlier* incident involving father allegedly holding a gun to her and her obtaining the domestic violence restraining order. Mother does not cite to any "*further acts of domestic violence*" (*ibid.*, italics added) that occurred by the time of the July 2014 hearing.

Fourth, mother fails to provide an adequate record on appeal to assess her contention that father did not present certain evidence necessary to rebut the section 3044 presumption, such as evidence that he had complied with the terms and conditions of his probation (see § 3044, subd. (b)(5)), or that he successfully completed a batter's treatment program that met certain requirements (see *id.*, subd. (b)(2); Pen. Code, § 1203.097, subd. (c)). The record on appeal does not contain a reporter's transcript or settled statement reflecting the oral proceedings during the July 2014 evidentiary hearing. As a result, the record is inadequate to assess these aspects of mother's claim of error and must be resolved against her. (*Denham*, *supra*, 2 Cal.3d at p. 564; *Ballard*, *supra*, 41 Cal.3d at p. 574; *Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296; *Gee*, *supra*, 99 Cal.App.4th at p. 1416; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [absence of a reporter's transcript on appeal precludes a challenge to the sufficiency of the evidence because it is presumed the unreported trial testimony would demonstrate the absence of error].)

Fifth, we are not persuaded by mother's contention that the trial court failed to apply the preponderance of the evidence standard in determining whether father had overcome the presumption. (See § 3044, subd. (a) [section 3044 presumption "may only

19

be rebutted by a preponderance of the evidence"].)  In making this contention, mother refers to the trial court's statement in its written order that "Father *seems* to have overcome the presumption by participation and completion of BIP." (Italics added.) "Seem" means "to appear to the observation or understanding," and "to give the impression of being."  (Merriam-Webster's Online Dict. <http://www.merriam-webster.com/dictionary/seem> [as of August 27, 2015].)  The court's statement may thus be understood to reflect the court's observation, understanding, or impression that father had overcome the presumption of section 3044.  (Cf. *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [using "seems" to describe when instructional error is prejudicial in a civil case by stating that such error occurs " 'where it seems probable' that the error 'prejudicially affected the verdict' "]; *In re Alvernaz* (1992) 2 Cal.4th 924, 955 (dis. opn. of Mosk, J.) ["it seems plain that petitioner has sustained his burden of proving that counsel's representation at the plea bargaining stage fell below an objective standard of reasonableness under prevailing norms of practice"].)  Nothing in the court's written order, including the court's use of the word "seems," indicates that the court applied a lesser standard of proof than the preponderance of the evidence standard.

Lastly, it appears that mother disagrees with the weight the trial court either did or did not place on certain factors that were relevant to the trial court's section 3044 determination.  Putting aside the issue that mother has failed to provide an adequate record on appeal from which this court can determine what evidence was presented at the oral proceedings in July 2014, this court cannot reweigh the evidence presented below. (*Black Hawk Tobacco*, *supra*, 197 Cal.App.4th at p. 1567.)

In sum, we are not persuaded by mother's contentions that the trial court failed to consider the statutory factors and evidence relevant to the determination of whether father rebutted the section 3044 presumption.  Accordingly, we determine that mother fails to establish that the court misapplied section 3044.

20

**D.** *Applicability of LaMusga Factors*

Mother contends that the trial court erred by using the factors articulated in *LaMusga*, *supra*, 32 Cal.4th 1072 to determine the best interests of the children with respect to their proposed relocation with mother. According to mother, *LaMusga* "specifically states that it is not necessarily applicable in domestic violence cases." Mother contends that "[t]he proper rule in a domestic violence case where the victim parent wishes to relocate is provided by" section 3046, subdivision (a)(2), and that under this section, the court "should have simply denied [father's] request to block [her] relocation" of the children.

In *LaMusga*, the California Supreme Court set forth the factors a court should generally consider in determining whether a change in custody is in the best interests of a child in a move-away case. The court stated: "Among the factors that the court ordinarily should consider when deciding whether to modify a custody order in light of the custodial parent's proposal to change the residence of the child are the following: the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; *the reasons for the proposed move*; and the extent to which the parents currently are sharing custody." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101, italics added.)

The *LaMusga* court explained the significance of the reasons for a proposed move. "[A] decision to change a child's residence ordinarily does not reflect upon the parent's suitability to retain primary physical custody." (*LaMusga*, *supra*, 32 Cal.4th at p. 1098.) However, " '[a]n obvious exception is a custodial parent's decision to relocate simply to frustrate the noncustodial parent's contact with the minor children. . . . [S]uch bad faith

21

conduct may be relevant to a determination of what permanent custody arrangement is in the minor children's best interest. [Citations.]' [Citation.]" (*Id.* at p. 1099.) Nonetheless, "[e]ven if the custodial parent has legitimate reasons for the proposed change in the child's residence and is not acting simply to frustrate the noncustodial parent's contact with the child, the court still may consider whether one reason for the move is to lessen the child's contact with the noncustodial parent and whether that indicates, when considered in light of all the relevant factors, that a change in custody would be in the child's best interests." (*Id.* at p. 1100, fn. omitted.) In a footnote that mother in the instant case relies on, the *LaMusga* court stated, "We have no occasion in this case to consider circumstances in which a reason for a proposed move is to minimize contact with a noncustodial parent who has engaged in a pattern of abuse of the custodial parent or the children or who has a substance abuse problem." (*Id.* at p. 1100, fn. 5.)

This footnote in *LaMusga* does not provide support for mother's contention that the *LaMusga* factors do not apply in move-away cases involving domestic violence. Rather, the footnote suggests that, if a parent's reason for relocation is to limit the other parent's contact with the child, then the determination of whether a change in custody is in the best interests of the child may be affected by whether that other parent has engaged in domestic violence. In other words, domestic violence may be a factor, among the many other factors set forth in *LaMusga*, to consider in the best interests analysis in move-away cases. (See *F.T.*, *supra*, 194 Cal.App.4th at p. 28 [in a move-away case, if the parent rebuts the § 3044 presumption, then the court must consider the domestic violence "together with all of the *LaMusga* and other relevant factors" in determining the child's best interests].)

Further, we are not persuaded by mother's contention that section 3046, subdivision (a)(2) required the trial court to deny father's request to have the children reside with him for a greater amount of time. Section 3046 states: "(a) If a party is absent or relocates from the family residence, the court shall not consider the absence or

22

relocation as a factor in determining custody or visitation in either of the following circumstances: [¶] . . . [¶] (2) The party is absent or relocates because of an act or acts of actual or threatened domestic or family violence by the other party." (*Id.*, subd. (a)(2).) In this case, assuming mother's move to Clovis constitutes a "relocat[ion] from the family residence" within the meaning of section 3046, subdivision (a), the court in its written order determined that mother and her new spouse relocated because of a job opportunity for the new spouse. There was no finding by the trial court that mother moved due to "an act or acts of actual or threatened domestic or family violence by" father. (*Id.*, subd. (a)(2).) Mother also does not provide a citation to the record showing that any such evidence was even presented during the July 2014 evidentiary hearing.

In sum, mother fails to demonstrate that the trial court erred by relying on the *LaMusga* factors in determining the best interests of the children.

### E. *Application of LaMusga*

Mother contends that the trial court erred by failing to determine whether the proposed move of the children would cause detriment to them, and failed to consider the harm that would result from disrupting the existing custody arrangement.

In a move-away case involving " 'an initial custody determination, the trial court has "the widest discretion to choose a parenting plan that is in the best interest of the child." ' " (*LaMusga*, *supra*, 32 Cal.4th at p. 1087.) However, when a parent who has sole physical custody under an existing judicial custody order seeks to relocate, a change of custody is justified " 'only if, as a result of relocation with that parent, the child will suffer detriment rendering it " 'essential or expedient for the welfare of the child that there be a change.' " [Citation.]' [Citation.]" (*Id.* at p. 1089.) This rule follows from the proposition that, "as with any allegation that 'changed circumstances' warrant a modification of an existing custody order, the noncustodial parent has a substantial burden to show that ' "some significant change in circumstances indicates that a different arrangement would be in the child's best interest." [Citation.]' [Citation.] The changed

23

circumstance rule provides 'that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements. [Citations.]' [Citation.]" (*Id.* at p. 1088, fn. omitted.)

Consequently, "the noncustodial parent bears the initial burden of showing that the proposed relocation of the children's residence would cause detriment to the children, requiring a reevaluation of the children's custody. The likely impact of the proposed move on the noncustodial parent's relationship with the children is a relevant factor in determining whether the move would cause detriment to the children and, when considered in light of all of the relevant factors, may be sufficient to justify a change in custody. If the noncustodial parent makes such an initial showing of detriment, the court must perform the delicate and difficult task of determining whether a change in custody is in the best interests of the children." (*LaMusga*, *supra*, 32 Cal.4th at p. 1078.)

The California Supreme Court has "noted that '[a] different analysis may be required when parents *share* joint physical custody of the minor children under an existing order and in fact, and one parent seeks to relocate with the minor children.' [Citation.] In such cases, if it is shown that the best interests of the children require modification or termination of the order, the court 'must determine de novo what arrangement for primary custody is in the best interest of the minor children.' [Citation.]" (*LaMusga*, *supra*, 32 Cal.4th at p. 1089, fn. 3 [quoting *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 40, fn. 12].)

In *Niko v. Foreman* (2006) 144 Cal.App.4th 344, a majority held that "[w]hen the parents have joint physical custody, modification of the coparenting arrangements is not a change of custody requiring change of circumstances. Instead, the trial court has wide

24

discretion to choose a parenting plan that is in the best interest of the child. [Citation.] The joint custody moving parent does not have the presumptive right to change the child's residence, and bears no burden of proving the move is essential or imperative. [Citation.] Nor does the opposing nonmoving parent bear the burden of showing substantial changed circumstances require a change in custody or that the move will be detrimental to the child." (*Id.* at pp. 363-364.) The majority concluded that a court "must review de novo the best interest of the child" and may "fashion a new time-share arrangement for the parents." (*Id.* at p. 364.) The dissent disagreed that "a thousand-mile move is not a change in physical custody." (*Id.* at p. 371 (dis. opn. of Bedsworth, J.).) The dissent believed "a showing of significant changed circumstances" was required in order to have "a reassessment of a final custody judgment." (*Id.* at pp. 371-372 (dis. opn. of Bedsworth, J.).)

In this case, the limited record on appeal reflects that the parties had joint physical and legal custody under an existing order prior to the July 2014 evidentiary hearing on the move-away issue. Further, the trial court determined in its order after the hearing that the parties were "sharing custody/parenting time equally on a week on/week off schedule," and that "[d]uring the last school year, they shared custody equally, but on a different schedule." Therefore, based on the record on appeal, it is not apparent that the trial court was required to determine whether the move would cause detriment to the children as set forth in *LaMusga*.

Even assuming the trial court was required to determine whether "the proposed relocation of the children's residence would cause detriment to the children" before reevaluating the children's custody (*LaMusga*, *supra*, 32 Cal.4th at p. 1078), we believe that the court's July 2014 written order may reasonably be interpreted as having made that finding. The court expressly stated that it was considering the *LaMusga* factors, including the "[d]etriment [c]aused by [the] [m]ove." Regarding detriment, the court stated: "It is clear to the Court that the move will be detrimental to the relationship of

25

one of the parents; however, the effect can be minimized." This statement obviously referred to the relationship between the children and the parent with whom the children would not be living. If the court found the move detrimental to the parent-child relationship, then the move would necessarily cause detriment to each child. (See *In re Marriage of Edlund & Hales* (1998) 66 Cal.App.4th 1454, 1472 ["we cannot imagine a case in which a child with any meaningful relationship with the noncustodial parent would not be 'significantly negatively impacted' by a good faith decision by a custodial parent to move, over the noncustodial parent's objection, to a distant location"].) Mother fails to demonstrate that the court did not make a finding of detriment with respect to the proposed relocation of the children.

We also believe that the trial court considered the harm that would result from disrupting the existing custody arrangement. As we have explained, the court found in its July 2014 order that the parents were sharing custody/parenting time "equally on a week on/week off schedule," and that they had also "shared custody equally" during the prior school year. With respect to "[s]tability and [c]ontinuity," the court stated: "Continuity will be very difficult because of the distance of the move. Further, these parents have been involved in the school, sports and activities of their children. That must be affected by the move." The court later observed: "In situations where parents share time with their children equally, a move-away is particularly difficult. . . . [¶] . . . The Court is required to evaluate all of the *LaMusga* factors in conjunction with the goal of providing a situation that is in the best interests of the children. It has done so in this case." Given the court's findings regarding shared custody/parenting time, the court's recognition of the obvious effect a move has when both "parents have been involved" with their children, and the court's express statement that it had evaluated all of the *LaMusga* factors, including "[s]tability and [c]ontinuity," mother fails to establish that the court did *not* consider the harm that would result from disrupting the existing custody arrangement. Moreover, although "courts would do well to state on the record that they have

26

considered this interest in stability, . . . the lack of such a statement does not constitute error and does not indicate that the court failed to properly discharge its duties. [Citation.]" (*LaMusga*, *supra*, 32 Cal.4th at p. 1093.)

We believe the trial court's order in this case reflects its careful consideration of the relevant factors set forth in *LaMusga*. As mother fails to demonstrate that the court applied improper legal criteria, or that the court's order otherwise " 'exceeds the bounds of reason by being arbitrary, capricious or patently absurd,' " we determine that no abuse of discretion has been shown. (*Black Hawk Tobacco, supra*, 197 Cal.App.4th at p. 1567; see *Fajota*, *supra*, 230 Cal.App.4th at p. 1497.)

## IV. DISPOSITION

The July 16, 2014 order is affirmed. Costs on appeal are awarded to respondent K.A.

27

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.

*J.S. v. K.A.*
**H041438**